## HARRY J. CARROLL ET AL. *vs.* GEORGE WATERS & CO. ET AL.

*Mechanics' Lien—Contract by Owner to Pay for Materials Furnished During Illness of Builder and Contractor.*

Defendant employed a builder to put up a house and stable on his land, under a contract by which it was provided that, if the builder should fail to carry on the work with due diligence, the owner should be at liberty, after notice, to provide labor and materials and deduct the cost thereof from the contract price. After doing a part of the work, the builder became ill in November, 1905, and did not resume work until January, 1906. During this interval, the defendant took charge of the building himself and ordered certain materials from the plaintiff and paid for the same. After the builder resumed work in January, he also ordered materials from plaintiffs, which were not paid for. Under a bill to enforce a mechanics' lien claim for the same, *held*, that the evidence shows that the defendant did not agree with the plaintiffs to pay for all materials to be used in completing the house, but that his contract was to pay only for materials supplied on his order, and until the builder resumed charge of the work; that plaintiffs had actual knowledge of his resumption of work and supplied the materials sued for in this case to the builder on his order, and that consequently plaintiffs are not entitled to enforce payment for the same from the defendant.

*Decided June 24th, 1908.*

Appeal from the Circuit Court for Baltimore County (DUN-CAN, J.)

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER and WORTHINGTON, JJ.

*Edgar H. Gans* and *Harry M. Benzinger* (with whom was *Z. Howard Isaac* on the brief), for the appellants.

*Maurice E. Skinner*, for the appellees.

BRISCOE, J., delivered the opinion of the Court.

This is a bill in equity, filed in the Circuit Court for Baltimore County, by the appellees against the appellants to enforce the payment of certain mechanics' liens, under Article 63, of the Code of Public General Laws, titled "Mechanics' Liens," for materials alleged to have been supplied the defendant, Carroll, for the erection of a cottage and stable on his property situate near Rockland, in the Greenspring Valley, Baltimore County.

The defendant corporation, The Eutaw Savings Bank of Baltimore, is the holder of a mortgage, dated the 9th day of May, 1906, for the sum of $8,000 on the land covered by the buildings, and adjacent thereto, against which the lien is asserted and sought to be enforced, and is, therefore made a party defendant to the proceedings.

The plaintiffs, George E. Waters & Company, are lumber merchants doing business in the city of Baltimore, and claim the sum of five hundred and ninety-six dollars and twenty cents to be due them by the defendant, Carroll, the owner, against the gronnd and the improvements thereon, for materials furnished by the lienor for the erection and construction of the buildings, at the request of the owner, according to a bill of particulars filed in the case. The sum of two hundred and eighty dollars and twenty-eight cents being the amount of claim against the dwelling house, and the sum of $315.92 being the amount against the stable.

The plaintiffs, Macarthy & Harper, are hardware mer-

chants doing business in the city of Baltimore and assert a
lien claim of $189.44 against the dwelling and the sum of
$20.90 as the amount against the stable, as set forth in a
bill of particulars filed with the bill, as Plaintiff's Exhibit No. 2.

The bill to enforce the alleged liens was filed on the 21st
of August, 1906, and avers in substance that the sums of
money stated in the bills of particulars being due the plaintiffs
for the materials furnished by them and the sums being un-
paid, they did on the 18th of August, 1906, file in the Clerk's
office their respective claims for liens, under Article 63 of the
Code, against the grounds and buildings belonging to the de-
fendant, Carroll, and prayed that a decree be passed for the
sale of the property, and the proceeds of the sale be distributed
among the lienors under the direction of the Court.

The defendant, Carroll, answered the bill on the 6th of
October, 1906, and denies any contract with the plaintiffs for
the sale and purchase of either the lumber or hardware, used
in the erection of the dwelling house and stable upon the
grounds owned by him; that he did not request either of the
plaintiffs to furnish the materials set out in their lien claims,
and that he does not owe the amounts alleged or claimed by
them, nor any sum whatsoever, and insists, that the plaintiffs,
or either of them had no reason whatsoever for filing such
lien claims.

The case was heard in the Court below, upon bill, answer
and proof, and from a decree sustaining in part the plaintiff's
contentions, this appeal has been taken.

The facts upon which the decision of the case must rest,
briefly stated are these.   On the 18th of May, 1905, the de-
fendant, Carroll, entered into a written contract with one, I.
S. Owings, as contractor, to erect for him, a house and stable
upon his property, situate in Baltimore County.   The contract
price, as agreed upon between the parties was the sum of
$9,700, the contractor stipulating to do the work and furnish
all necessary materials.   The contract is the usual builders'
contract as set out in the record, and contains the following
stipulation, Article 5, bearing upon the questions at issue and

upon the principal controversy involved in the case. It is as follows: "Should the contractor at any time refuse or neglect to supply a sufficiency of properly skilled workmen, or of materials of the proper quality, or fail in any respect to prosecute the work with promptness and diligence, or fail in the performance of any of the agreements herein contained, such refusal, neglect or failure being certified by the architect, the owner shall be at liberty after ten days' written notice to the contractor, to provide any such labor or materials, and to deduct the cost thereof from any money then due or thereafter to become due to the contractor under this contract. And if the architect shall certify that such refusal, neglect or failure is sufficient grounds for such action, the owner shall also be at liberty to terminate the employment of the contractor for the said work and to enter upon the premises and take possession for the purpose of completing the work included under this contract of all materials, tools and appliances thereon, and to employ any other person or persons to finish the work, and to provide the materials therefor, and in case of such discontinuance of the employment of the contractor he shall not be entitled to receive any further payment under this contract until the said work shall be wholly finished, at which time, if the unpaid balance of the whole amount to be paid under this contract shall exceed the expense incurred by the owner, in finishing the work, such excess shall be paid by the owner to the contractor; but if such expense shall exceed such unpaid balance, the contractor shall pay the difference to the owner. The expense incurred by the owner as herein provided, either for furnishing materials or finishing the work, and any damage incurred through such default, shall be audited and certified by the architect, whose certificate thereof shall be conclusive upon the parties."

It is admitted and it so appears from the record, that Owings, the contractor, began work under the contract, and continued thereon, until November 22nd, 1905, when he was taken sick and removed to Mt. Hope Hospital for treatment. He remained there on or about three weeks; he returned

home, at the expiration of this time and resumed work shortly afterward upon the buildings under the contract.

The contract to furnish lumber and hardware had been awarded by the contractor to the plaintiffs, and on the 22nd of November, Owings, the contractor, owed the plaintiffs, Waters & Co., on or about $6,000, and the plaintiffs, Macarthy & Harper, between $600 and $700, on account of this and other contracts.

The defendant, Carroll, paid the contractor the sum of $1,500, prior to the 22nd of November, 1905, on the contract price and there is no contest in so far as these proceedings are concerned as to the materials furnished the contractor before his disability and prior to his going to the hospital.

The real question at issue and the one we are called upon to decide, is, what was the contract of sale between the plaintiffs and the defendant, Carroll, as to the materials furnished by the former to the latter, to be used on the property, subsequent to the date when Owings went to the asylum.

The question is an exceedingly narrow one of fact, and rests upon a large mass of contradictory testimony, to support an oral agreement between the parties, alleged to have been made by the appellant, Carroll, and the appellees, in November, 1905, shortly after Owings was sent to the hospital for treatment.

The contention of the plaintiffs, is, that the defendant, Carroll, under the oral contract of November, 1905, agreed to pay for all the materials furnished for the completion of the contract for the erection of the house and stable.

The defendants claim and insist, that Carroll, the owner, only agreed and contracted to pay for such material as was necessary to continue the work during the time Owings was in the hospital and not able to look after the work; that Carroll should have charge of the work and be liable to pay for materials, only so long as the contractor was at the asylum, and until he resumed work.

Now, it appears, from the undisputed testimony, that the contractor left the hospital between the fifteenth and twentieth

of December, and resumed work on the buildings shortly thereafter, in the early part of January. It also appears, by the uncontradicted proof, that Carroll paid the bills for materials furnished by the plaintiffs, during the time Owings was in the hospital, and an additional sum of $500, was paid by check to Owings on January 26th, 1905, and turned over to the committee for the benefit of Owings' creditors. This check is endorsed by both Owings, and by the plaintiffs, Macarthy & Harper.

The claims of Waters & Company, as allowed by the Court below, is based on a bill for lumber furnished on February 23rd, 1906, for $10.50, and on March 7th, amounting to $421.58. The other items amounting to $174.62 and alleged to have been furnished after the last named date, were disallowed.

The claim of Macarthy & Harper consists of hardware furnished from March 29th, 1906, to July 11th, amounting to the sum of $210.34, and was allowed in full by the decree of Court, dated the 8th of October, 1907.

Upon the main question in the case and that is, did the owner of the buildings, Carroll, agree to become responsible for all the materials furnished by the plaintiffs, or did he only become liable for the materials furnished while the contractor was in the hospital and until resumed the work again; the testimony is very contradictory and absolutely irreconcilable.

The record is a voluminous one, and contains a large mass of testimony, contradictory not only on the principal questions at issue, but upon nearly all the details that could throw any light upon the real intention and understanding between the parties to the alleged oral agreement. It would then answer no good purpose for us to discuss it here, or to attempt to reconcile the conflicting statements of the witnesses for both the plaintiffs and the defendants.

We fully concur, in the conclusion reached by the Court below, in that part of its opinion wherein it is stated, "in view of the very conflicting testimony referred to, I am forced to accept what appears from all the facts and circumstances to

be the most reasonable contention of the two above set out, *i. e.*, that the defendant would be responsible for such materials as would be necessary to continue the work during the time Owings was at the hospital and unable to look after the work."

The burden of proof was upon the plaintiffs to establish the contract upon which they sought to recover, and without discussing the testimony in the record, we are of opinion, that the evidence is not only insufficient to support the plaintiffs' contentions, but the weight of evidence affirmatively sustains the defendants' position, that the parties agreed that Carroll should have charge of the work and be liable to pay only for materials so long as Owings was in the asylum and until he resumed work. This conclusion, practically disposes of the case, because the lumber and hardware furnished by the plaintiffs to be used on the buildings and included in their lien claims, was confessedly furnished after Owings left the hospital and after he resumed work, and clearly could not have been covered by the terms of the oral contract between the parties. And this being the contract, as established by the evidence, and by the ruling of the Court below, Carroll's responsibility for materials furnished ceased and terminated when Owings left the asylum and resumed the work.

The fact, then, that Owings resumed the work upon the buildings under the original contract, after he returned from the asylum, necessarily terminated the contract and relieved him from any further liability to the plaintiffs.

There was no reason or necessity for Carroll to give notice to the plaintiffs when Owings resumed work, as ruled by the Court below, because there is no evidence to show that "notice" to this effect was a requirement of the agreement. Mr. Carroll testified, "I made no agreement to notify any one and I did not notify any one until Mr. Waters sent his bill (in March, 1906), as I did not think it was necessary under the agreement I made." But as a matter of fact, the record shows that the plaintiffs had actual knowledge of the fact that Owings had resumed work on the buildings before the materials, now

in dispute, were furnished. The firm of Waters & Co. accepted orders in Owings' handwriting, as far back as January 10th, 1906, and Macarthy & Harper received the January check for $500 as early as January, payable to the order of Owings, and endorsed by him to them. Mr. Waters testified, as to the order of January 10th, that Mr. Owings was out and had just as much charge of the job as he ever had. The bill of March 7th, amounting to $421.58 was ordered by Owings of Waters & Co., in person, and both the plaintiffs had personal knowledge from interviews, and their course of dealings with Owings, that he had resumed work under the original contract.

Upon this state of facts it is clear that the plaintiffs had actual knowledge of the very fact, which the Court held, it was necessary for the defendant to give them notice before he could be relieved of the responsibility. Besides this, there was no stipulation in the oral contract, that notice should be given the plaintiffs of the resumption of work by the contractor, and under the facts of the record, the notice held by the Court to be necessary to support a recovery, would have been nugatory and of a fact the plaintiffs already had knowledge.

We are, therefore, of opinion, upon both the law and evidence that the Court below committed an error in allowing the plaintiffs' claims as liens in this case, and as it follows from the conclusion we have reached upon the record that there can be no recovery, upon the claims filed by the plaintiffs, the decree of the lower Court will be reversed, and the bill dismissed.

*Decree reversed and bill dismissed with costs.*